Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Melissa J. Levine
mlevine@ipcounselors.com
EPSTEIN DRANGEL LLP
6 East 45th Street, 7th Floor
New York, NY 10017
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiffs*
*POP MART Americas Inc.,*
*POP MART (Singapore) Holding Pte. Ltd. and*
*Beijing POP MART Cultural & Creative Co. Ltd.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POP MART AMERICAS INC., POP MART (SINGAPORE) HOLDING PTE. LTD. and BEIJING POP MART CULTURAL & CREATIVE CO. LTD., <br><br> *Plaintiffs* <br><br> v. <br><br> COWBOY USA CORP. and COWBOY WORLD CORP., <br><br> *Defendants* | **CIVIL ACTION NO.** <br> **26-cv-2807** <br><br><br> **COMPLAINT** <br><br> **Jury Trial Requested** |

Plaintiffs POP MART Americas Inc. ("POP MART Americas"), POP MART (Singapore) Holding Pte. Ltd. ("POP MART Singapore") and Beijing POP MART Cultural & Creative Co., Ltd. ("POP MART Beijing") (collectively, "Plaintiffs" or "POP MART"), by and through their undersigned counsel, allege as follows:

## NATURE OF THE ACTION

1.    This action involves claims for trade dress infringement, false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and copyright infringement of POP MART Beijing's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, by Defendants Cowboy USA Corp. ("Cowboy"), and COWBOY WORLD CORP., ("COWBOY WORLD") (collectively, the "Defendants"), arising from their manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of unlicensed and infringing versions of Plaintiffs' LABUBU Products (as defined *infra*).

## JURISDICTION AND VENUE

2.    This Court has federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. § 1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.

3.    Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue

from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiffs in New York such that Defendants should reasonably expect such actions to have consequences in New York.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, a substantial part of the events or omissions giving rise to the asserted claims occurred in this judicial district, and as noted above, Defendants are subject to personal jurisdiction in this judicial district.

## THE PARTIES

5.      POP MART Americas is a Delaware corporation with its principal place of business at 1181 Galleria Way, Glendale, California 91210.

6.      POP MART Singapore is a limited company organized under the laws of Singapore with a principal place of business at 22 Cross Street, #03-119 Cross Street Exchange Singapore 048421.

7.      POP MART Beijing is a limited company organized under the laws of China with a principal place of business at Room 3606, 36th Fl., Block A, 101, Fl. 4-33, Bldg. 13, Zone 4, Wangjing Dongyuan, Chaoyang Dist. Beijing China 100102.

8.      Upon information and belief, Defendant Cowboy USA Corp. is a New Jersey corporation with its principal place of business at 1764 New Durham Rd., STE A South Plainfield, NJ 07080.

9.      Upon information and belief, Defendant Cowboy World Corp. is a New York corporation with its principal place of business at 28 West 27th Street, New York, NY 10001.

## GENERAL ALLEGATIONS

2

**Plaintiffs and Their Well-Known LABUBU Products**

10.    POP MART is a market leading player in character-based entertainment and is world renowned for pioneering designer toy culture and its collectible and imaginative collectibles.

11.    POP MART works with artists and collaborates with major media companies (such as Disney) to produce high-quality and unique collectible items and figures, accessible to customers in novel ways, such as in robotic vending machines, called "Roboshops", as well as small cardboard packages with mystery collectibles, called "blind boxes" ("POP MART Products").[1]

12.    The POP MART Products are sold globally through Plaintiffs' e-commerce website, www.popmart.com, through the POP MART app and other online channels (e.g., Amazon and TikTok Shop), in over 500 POP MART retail stores and more than 2,500 POP MART Roboshops, in over 30 countries and regions.[2]

13.    In the United States, the POP MART Products are distributed by POP MART Americas, which is the exclusive licensee of the entire portfolio of POP MART Singapore's and POP MART Beijing's intellectual property rights in the United States.

14.    One of POP MART's most famous products is its line of elf-like characters with mischievous looks from POP MART's collectible series, "THE MONSTERS". "THE MONSTERS" family of characters, originally created by Hong Kong-born illustrator Kasing Lung in 2015 in picture books, are a number of elf-like creatures including the most recognized Labubu, Spooky, Tycoco, and Zimomo. Among them, the most popular character is Labubu, which products come in a variety of shapes, sizes, colors, styles, and product types, such as keychains,

---

[1] Mark Faithfull, *How Pop Mart Became China's Latest Brand To Target U.S. Growth*, FORBES (Jun 05, 2024), https://www.forbes.com/sites/markfaithfull/2024/06/05/how-pop-mart-became-chinas-latest-brand-to-target-us-growth/.
[2] *About POP MART*, POP MART, https://www.popmart.com/us/brand-introduction (last visited Apr. 2, 2026).

3

plush dolls, and accessories (the "LABUBU Product(s)").[3] Images of examples of the LABUBU Products are attached hereto as **Exhibit A** and incorporated herein by reference.

15.     The LABUBU Products typically retail for between $14.99 - $99.99; however, collectibles and other rare figures may be sold for significantly more,[4] such as the "Mega" LABUBU Product, which retails for $959.90.[5]

16.     Recently, the LABUBU Products have become viral, sending consumers in a frenzy to purchase them before they sell out.[6] There have been more than 2 million #LABUBU posts on TikTok alone in the last two years[7] and celebrities such as Rihanna, Cher, and Kim Kardashian have posted images on Instagram featuring LABUBU Products.

17.     The LABUBU Products have also been featured in many news outlets throughout the United States and globally, such as *The New York Times*[8], *BBC*[9], *Vogue*[10] and *Forbes*.[11]

18.     As evidence of POP MART's success, in 2024, its revenue more than doubled to $1.8 billion.[12]

---

[3] Rebecca Rodriguez, *What is Labubu? Why is she so popular? We have answers.,* NBC NEWS (June 3, 2025), https://www.nbcnews.com/select/shopping/what-is-a-labubu-rcna210622.

[4] Mary Whitfill Roeloffs, *This Labubu Just Sold For $10,585: Here's Why They Might Be Good Investments*, FORBES (June 24, 2025), https://www.forbes.com/sites/maryroeloffs/2025/07/24/this-labubu-just-sold-for-10585-heres-why-they-might-be-good-investments/.

[5] MEGA LABUBU TEC 1000% All About Us, POP MART, https://www.popmart.com/us/products/1011/mega-labubu-tec-1000-all-about-us (July 23, 2025).

[6] Juliana Kim, *'Labubu' is a plush toy that is causing a frenzy. Here's its origin story*, NPR (June 18, 2025) https://www.npr.org/2025/06/18/g-s1-72939/what-is-labubu-pop-mart-explained.

[7] *Trend Discovery*, TIKTOK, https://ads.tiktok.com/business/creativecenter/hashtag/LABUBU

[8] Esther Zuckerman, *Call It the Labubu Effect: Cute Sidekicks Rule Multiplexes This Summer*, NY TIMES (July 22, 2025), https://www.nytimes.com/2025/07/22/movies/labubu-movie-sidekicks-stitch-toothless.html.

[9] Fan Wang and Adam Hancock, *Adorable or just weird? How Labubu dolls conquered the world*, BBC (Jun. 19, 2025), https://www.bbc.com/news/articles/cy4ydxlm9n9o

[10] Lara Johnson-Wheeler, *And They Call It Plushie Love: Fashionable People on Their Labubu Obsession*, VOGUE (May 31, 2025) https://www.vogue.com/article/fashionable-people-on-their-labubu-obsession.

[11] Danielle Chemtob, *Forbes Daily: Labubu Phenomenon Makes A Killing For China Toy Company*, *Forbes* (Jul. 17, 2025), https://www.forbes.com/sites/daniellechemtob/2025/07/17/forbes-daily-labubu-phenomenon-makes-a-killing-for-china-toy-company/.

[12] Alisha Rahaman Sarkar, *Labubu doll maker says profits set to soar 350%,* INDEPENDENT (July 16, 2025), https://www.independent.co.uk/asia/china/labubu-pop-mart-profit-demand-b2789814.html; Pop Mart, Annual Report (2024), HKEX NEWS, https://www1.hkexnews.hk/listedco/listconews/sehk/2025/0423/2025042300687.pdf.

19.    While Plaintiffs have gained significant common law trademark and other rights in their LABUBU Products through their use, advertising and promotion of the same, POP MART Singapore and POP MART Beijing have also protected their valuable rights by filing for and/or obtaining federal U.S. trademark registrations.

20.    For example, POP MART Singapore and POP MART Beijing are the owners of the following U.S. Trademark Registration Nos.: 6,592,820 for " **POP MART** " for a variety of goods in Class 28; 7,839,156 for " THE MONSTERS " for a variety of goods in Class 28; and 7,839,144 for "LABUBU" for a variety of goods in Class 28 (the "LABUBU Registrations"). POP MART Singapore is also the owner of U.S. Trademark Application Serial No. 79/402,363 for "POP MART" for a variety of goods in Classes 14, 16, 21 and 25 (the "LABUBU Application") (the marks covered by the LABUBU Registrations and LABUBU Application are collectively referred to herein as the "LABUBU Marks"). True and correct copies of the LABUBU Registrations and LABUBU Application are attached hereto as **Exhibit B** and incorporated herein by reference.

21.    Plaintiffs own and/or are the exclusive licensees of unregistered trade dress rights in the design and appearance of the plush doll LABUBU Products (the "LABUBU Trade Dress"). Examples of the LABUBU Products bearing the LABUBU Trade Dress appear below:

| Examples of POP MART's LABUBU Trade Dress |
|---|
|  |
|  |
|  |

22.    The LABUBU Trade Dress consists of the following non-functional design

6

elements, which collectively create a highly distinctive visual appearance that sets the plush doll LABUBU Products apart from others in the vinyl plush toy market: (i) a wide mouth that stretches almost to the ears, with an exaggerated grin that reveals nine sharp little white teeth, with the fourth and fifth teeth centered; (ii) contrasting with the wide-grinning mouth, it has a prominent brow, overhanging the top of the eyes, giving the impression of a constant "frowning" expression in the eyes; (iii) eyes that are slender, oval shaped vertically, and also vertically aligned, and that are one eye width apart; (iv) a nose that is a small flat upside-down rounded triangle; (v) two closely spaced, ovoid ears that narrow at the top to a rounded point sticking up from the top of the head; (vi) a plump and oval-shaped body, with two short, rounded arms that each have a hand with four fingers and with two feet that each have three, claw shaped toes, all of which combine to create a fairy-tale or fantasy creature appearance.

23.    POP MART has invested substantial resources in advertising and promoting products bearing the LABUBU Trade Dress, including over $2 million in advertising expenditures and over 4.8 million units sold nationwide since the beginning of 2024. Through such marketing efforts, and POP MART's extensive use of the LABUBU Trade Dress, the LABUBU Trade Dress has acquired secondary meaning and consumers have come to recognize and associate the LABUBU Trade Dress exclusively with POP MART.

24.    In addition, POP MART Beijing owns the following U.S. Copyright Registration Nos. related to the LABUBU Products: VA0002452124, covering "THE MONSTERS - Exciting Macaron – Boxes"; VA0002452141, covering "THE MONSTERS - Exciting Macaron - Packing Bags"; VA0002451895, covering "THE MONSTERS - Exciting Macaron Vinyl Face Blind Box-Chestnut Cocoa"; VA0002424972, covering "Have a Seat Box"; VA0002424793, covering "Have a Seat Bag"; VA0002451935, covering "THE MONSTERS - Have a Seat Vinyl Plush Blind Box-

7

DUODUO"; VA0002451927, covering "THE MONSTERS - Have a Seat Vinyl Plush Blind Box-HEHE"; VA0002451857, covering "THE MONSTERS - Have a Seat Vinyl Plush Blind Box-ZIZI"; VA0002452119, covering "THE MONSTERS Big into Energy Series-Boxes"; VA0002452126, covering "THE MONSTERS Big into Energy Series-Packing Bags"; VA0002448371, covering "THE MONSTERS Big into Energy Series-Vinyl Plush Pendant Blind Box-LOVE"; VA0002452110, covering "THE MONSTERS Lazy Yoga Series-Ab Roller"; VA0002452114, covering "THE MONSTERS Lazy Yoga Series-Americano"; VA0002452102, covering "THE MONSTERS Lazy Yoga Series-Confident"; VA0002452112, covering "THE MONSTERS Lazy Yoga Series-Lay Down"; VA0002452115, covering "THE MONSTERS Lazy Yoga Series-Little Bird"; VA0002452099, covering "THE MONSTERS Lazy Yoga Series-Show Off"; VA0002452117, covering "THE MONSTERS Lazy Yoga Series-Sleeping"; VA0002452107, covering "THE MONSTERS Lazy Yoga Series-Stretch Out"; VA0002452111, covering "THE MONSTERS Lazy Yoga Series-Sweating"; VA0002452118, covering "THE MONSTERS Lazy Yoga Series-Yoga Coach"; VA0002452079, covering "THE MONSTERS Lazy Yoga Series-Zone Out"; VA0002448155, covering "THE MONSTERS - ANGEL IN CLOUDS Vinyl Face Doll"; VA0002450708, covering "FALL INTO SPRING-Vinyl Plush Doll"; VA0002451839, covering "THE MONSTERS Classic Series-LABUBU Figure (Brown)"; and VA0002451849, covering "LABUBU Timber Workshop Series-Playing on the Swing Plus Pendant Blind Box" (the works covered by the aforementioned registrations are collectively referred to herein as the "LABUBU Works"). True and correct copies of the U.S. copyright registrations for the LABUBU Works are included in **Exhibit C** and incorporated herein by reference.

25.     The success of the LABUBU Products, including those bearing the LABUBU

8

Trade Dress, is due in part to Plaintiffs' marketing and promotional efforts. These efforts include advertising and promotion through social media, POP MART's website (available at www.popmart.com), print and internet-based advertising and placement of the LABUBU Products at Plaintiffs' numerous retail stores.

26.     Plaintiffs' success is also due to their use of the highest quality materials and processes in making the LABUBU Products.

27.     Additionally, Plaintiffs owe a substantial amount of the success of the LABUBU Products to their consumers and word-of-mouth buzz that their consumers have generated.

28.     Plaintiffs' efforts, the quality of the LABUBU Products and the word-of-mouth buzz generated by their consumers have made the LABUBU Marks, LABUBU Trade Dress, LABUBU Works and LABUBU Products prominently placed in the minds of the public. Members of the public and retailers have become familiar with the LABUBU Marks, LABUBU Trade Dress, LABUBU Works and LABUBU Products and have come to associate them exclusively with POP MART. Plaintiffs have acquired a valuable reputation and goodwill among the public as a result of such associations.

29.     Plaintiffs have gone to great lengths to protect their interests in the LABUBU Marks, LABUBU Trade Dress, LABUBU Works and LABUBU Products. No one other than Plaintiffs and their authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works or use the LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works in connection with goods or services or otherwise, without the express permission of POP MART.

**Defendants' Wrongful and Infringing Conduct**

30.     Particularly in light of Plaintiffs' success with their LABUBU Products, as well as the reputation they have gained, Plaintiffs and their LABUBU Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiffs has amassed in their LABUBU Products, LABUBU Marks, LABUBU Trade Dress and LABUBU Works.

31.     Plaintiffs investigate and enforce against such activities, and through such efforts learned of Defendants' actions, which upon information and belief, vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products bearing or used in connection with the LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works, and/or products in packaging and/or containing labels bearing the LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works, and/or bearing or used in connection with designs and/or artwork that are confusingly and/or substantially similar to the LABUBU Marks, LABUBU Trade Dress and/or LABABU Works, and/or products that are identical, confusingly or substantially similar to the LABUBU Products (collectively, "Infringing Products" or "Counterfeit Products") to U.S. consumers, including those located in the State of New York, through, upon information and belief by way of distributing and supplying Infringing Products to retailers including but not limited to Marsalle, Inc. d/b/a NYS Collection ("Marsalle") and Petrogas Group Limited d/b/a Applegreen U.S. ("Applegreen") (collectively hereinafter referred to as "Retailers").

32.     Below is a representative example of the Infringing Products sold by Retailers:









33. Defendants' Infringing Products are nearly indistinguishable from Plaintiffs' LABUBU Products, only with minor variations that no ordinary consumer would recognize, and as such, the willfulness of Defendants' actions cannot be questioned. The Infringing Product shown bears substantially similar artwork to the LABUBU Products, uses a confusingly similar mark to the LABUBU Marks and is nearly identical to the LABUBU Trade Dress.

34. In addition to the product packaging identifying the Infringing Products as LABABY, the purchase orders obtained from Marsalle from its purchase of Infringing Products from Defendants show that Defendants are offering Infringing Products for sale under the item descriptions, e.g., "la BuBu have a seat," la BuBu energy" and la BuBu macron."  The use of POP MART's identical LABUBU Marks and confusingly similar LABABY mark, not only is intended to confuse, deceive and/or misdirect consumers as to the source of origin of the Infringing Products, but also causes consumers to believe that the Infringing Products are connected to, affiliated/associated with, licensed by, authorized by, endorsed by, approved by, or otherwise sponsored by POP MART, when in fact they are not.

35. Defendants' Infringing Products are offered by Defendants at heavily discounted prices, and both the Infringing Products and the materials used in connection therewith are of a

sub-par and inferior quality as compared to Plaintiffs' LABUBU Products.

36.    Defendants are not, and have never been, authorized by Plaintiffs or any of their authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the LABUBU Products or to use the LABUBU Marks, LABUBU Trade Dress or LABUBU Works or any designs and/or artwork that are confusingly and/or substantially similar to the LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works.

37.    Plaintiffs have confirmed that the Infringing Products offered for sale and sold by Defendants infringe the LABUBU Marks, LABUBU Trade Dress and the LABUBU Works.

38.    By these dealings in Infringing Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products), Defendants have violated Plaintiffs' exclusive rights in the LABUBU Marks, LABUBU Trade Dress and LABUBU Works, and have used designs and/or artwork that are confusingly and/or substantially similar to, identical to and/or constitute infringement of the LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works, in order to confuse consumers into believing that such Infringing Products are the LABUBU Products and aid in the promotion and sales of their Infringing Products.

39.    Defendants' conduct began long after Plaintiffs' adoption and use of the LABUBU Marks, LABUBU Trade Dress and LABUBU Works, after Plaintiffs obtained federal registrations in the LABUBU Marks and LABUBU Works, as alleged above, and after Plaintiffs' LABUBU Products, LABUBU Marks, LABUBU Trade Dress and LABUBU Works became well-known to the purchasing public.

40.    Prior to and contemporaneous with their infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the LABUBU Marks, LABUBU Trade Dress and LABUBU Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the LABUBU Products, and in bad faith adopted the LABUBU Marks, LABUBU Trade Dress and LABUBU Works.

41.    Defendants have been engaging in the illegal infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs, their LABUBU Marks, LABUBU Trade Dress, LABUBU Works and LABUBU Products.

42.    Defendants' conduct has caused, and will continue to cause confusion, mistake, economic loss, and have, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Infringing Products, thereby causing consumers to erroneously believe that such Infringing Products are licensed by or otherwise associated with Plaintiffs, thereby damaging Plaintiffs.

43.    Defendants' conduct has caused and will continue to cause, among other things, post-sale confusion, given that a potential purchaser, knowing that the public is likely to be confused or deceived by the Infringing Products, will choose to purchase Defendants' Infringing Products instead of LABUBU Products in order to gain the same prestige at a lower price.

44.    By engaging in these actions, Defendants have willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiffs: counterfeited and/or infringed the LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works, committed unfair competition and unfairly and unjustly profited from such activities at

14

Plaintiffs' expense.

45.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Trademark Counterfeiting)
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**
### (By POP MART Singapore and POP MART Beijing Against Defendant)

46.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

47.     POP MART Singapore and POP MART Beijing are the exclusive owners of all right and title to the LABUBU Marks.

48.     POP MART has continuously used the LABUBU Marks in interstate commerce since on or before the dates of first use as reflected in the registrations for the LABUBU Marks attached hereto as **Exhibit B**.

49.     Without POP MART Singapore's and POP MART Beijing's authorization or consent, with knowledge of POP MART Singapore's and POP MART Beijing's well-known and prior rights in their LABUBU Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the LABUBU Marks and/or used spurious designations that are identical with, or indistinguishable from, the LABUBU Marks on or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

50.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with POP MART, in or affecting interstate commerce,

15

and/or have acted with reckless disregard of POP MART Singapore's and/or POP MART Beijing's rights in and to the LABUBU Marks through their participation in such activities.

51.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the LABUBU Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

52.     Defendants' unauthorized use of the LABUBU Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs or their authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the LABUBU Marks.

53.     Defendants' actions constitute willful counterfeiting of the LABUBU Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

54.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendant has caused substantial monetary loss and irreparable injury and damage to POP MART Singapore and POP MART Beijing, their businesses, their reputation and their valuable rights in and to the LABUBU Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which POP MART Singapore and POP MART

16

Beijing  have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to POP MART Singapore and POP MART Beijing and their valuable LABUBU Marks.

55.     Based on Defendants' actions as alleged herein, POP MART Singapore and POP MART Beijing are entitled to injunctive relief, damages for the irreparable harm that POP MART Singapore and POP MART Beijing have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [15 U.S.C. § 1114/Lanham Act § 32(a)]
### (By POP MART Singapore and POP MART Beijing Against Defendant)

56.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

57.     POP MART Singapore and POP MART Beijing are the exclusive owners of all right and title to their respective LABUBU Registrations.

58.     POP MART has continuously used the LABUBU Marks in interstate commerce since on or before the dates of first use as reflected in the LABUBU Registrations attached hereto as **Exhibit B**.

59.     POP MART Singapore and POP MART Beijing, as owners of all right, title and interest in and to the LABUBU Marks, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

60.     Defendants were, at the time they engaged in their actions as alleged herein,

actually aware and/or had constructive notice that POP MART Singapore and POP MART Beijing are the owners of the LABUBU Registrations for the LABUBU Marks.

61. Defendants did not seek and thus inherently failed to obtain consent or authorization from POP MART Singapore and POP MART Beijing, as the registered trademark owners of the LABUBU Registrations for the LABUBU Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the LABUBU Products and/or related products bearing the LABUBU Marks into the stream of commerce.

62. Defendants knowingly and intentionally used the LABUBU Marks, or marks that are identical or confusingly similar thereto, on or in connection with the manufacture, importation, exportation, advertisement, marketing, promotion, distribution, offering for sale and/or sale of Counterfeit Products.

63. Defendants knowingly and intentionally reproduced, copied and colorably imitated the LABUBU Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Defendants' Counterfeit Products.

64. Defendants' egregious and intentional use of the LABUBU Marks or marks that are identical or confusingly similar thereto, in commerce on or in connection with Defendants' Counterfeit Products have caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into

believing that Defendants' Counterfeit Products are LABUBU Products or are otherwise associated with, or authorized by, POP MART Singapore and POP MART Beijing.

65.     Defendants' actions have been deliberate and committed with knowledge of POP MART Singapore's and POP MART Beijing's rights and goodwill in the LABUBU Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

66.     Defendants' continued, knowing, and intentional use of the LABUBU Marks without POP MART Singapore's and POP MART Beijing's consent or authorization constitutes intentional infringement of Plaintiffs' federally registered LABUBU Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

67.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, POP MART Singapore and POP MART Beijing have suffered substantial monetary loss and irreparable injury, loss and damage to their business and their valuable rights in and to the LABUBU Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which POP MART Singapore and POP MART Beijing  have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to POP MART Singapore and POP MART Beijing and the valuable LABUBU Marks.

68.     Based on Defendants' actions as alleged herein, POP MART Singapore and POP MART Beijing  are entitled to injunctive relief, damages for the irreparable harm that POP MART Singapore and POP MART Beijing have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys'

19

fees and costs.

## THIRD CAUSE OF ACTION
**(Infringement of Unregistered Trademark & Infringement of Unregistered Trade Dress)**
**[15 U.S.C. § 1125/Lanham Act § 43(a)]**
**(By All Plaintiffs Against Defendants)**

69.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

70.     Plaintiffs have continuously used the LABUBU Mark covered by the LABUBU Application (the "Unregistered LABUBU Mark") in interstate commerce since on or before the date of first use as reflected in the LABUBU Application attached hereto as **Exhibit B**.

71.     POP Mart Singapore as the owner of all right, title and interest in and to the Unregistered LABUBU Mark, and Plaintiffs, as the owners and/or exclusive licensees of all right, title and interest in and to the LABUBU Trade Dress have standing to maintain an action for trademark and trade dress infringement under 15 U.S.C. § 1125.

72.     As a result of Plaintiffs' efforts, the distinctive nature and quality of the LABUBU Products, POP MART's extensive international marketing and promotional efforts, the word-of-mouth buzz generated by POP MART's consumers, and the unsolicited press coverage featuring the LABUBU Products featuring the LABUBU Trade Dress, the Unregistered LABUBU Mark and LABUBU Trade Dress, as specifically defined above, are recognized as emanating from a single source, POP MART, and thus, have acquired secondary meaning.

73.     Plaintiffs have used the LABUBU Trade Dress exclusively in connection with the LABUBU Products and have expended considerable sums on advertising, marketing, and promotional activities surrounding the LABUBU Trade Dress and LABUBU Products.

74.     The LABUBU Trade Dress is composed of a combination of distinctive elements, which collectively create a unique commercial impression that is instantly associated

20

exclusively with POP MART. The specific design of the LABUBU Dress is not necessary for consumers to use the LABUBU Products or vinyl plush toy products generally. Moreover, there are a plethora of other design elements (e.g., body shapes, facial features, etc.) and/or product designs that are readily available to competitors in the toy industry, and specifically, competitors offering vinyl plush toys. Accordingly, the LABUBU Trade Dress is not functional.

75.    Defendants were, at the time it engaged in their actions as alleged herein, actually aware and/or had constructive notice that Plaintiffs are the owners of the Unregistered LABUBU Mark and the LABUBU Trade Dress.

76.    Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Plaintiffs, as the owners of the Unregistered LABUBU Mark and the LABUBU Trade Dress, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell LABUBU Products and/or related products bearing the Unregistered LABUBU Mark or LABUBU Trade Dress into the stream of commerce.

77.    Defendants knowingly and intentionally used the Unregistered LABUBU Mark and LABUBU Trade Dress and/or marks or designs that are identical or confusingly similar to the Unregistered LABUBU Mark and the LABUBU Trade Dress on or in connection with the Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' Infringing Products are LABUBU Products or related products, and/or that the Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs and/or that Defendants are affiliated, connected or associated with Plaintiffs, thereby creating a likelihood of confusion by consumers as to the source of the Infringing Products, and allowing Defendants to capitalize on the goodwill

21

associated with, and the consumer recognition of, the Unregistered LABUBU Mark and LABUBU Trade Dress, to Defendants' substantial profit in blatant disregard of Plaintiffs' rights.

78.    By using designs that are identical or confusingly similar to the Unregistered LABUBU Mark and LABUBU Trade Dress, Defendants have traded off the extensive goodwill of Plaintiffs and their Unregistered LABUBU Mark and LABUBU Trade Dress, and did in fact induce, and intend to, and will continue to induce customers to purchase the Infringing Products, thereby directly and unfairly competing with Plaintiffs. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs and their LABUBU Products, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

79.    Upon information and belief, Defendants' actions have been deliberate and committed with knowledge of Plaintiffs' rights and goodwill in the Unregistered LABUBU Mark and LABUBU Trade Dress, as well as with bad faith and the intent to cause confusion, mistake and deceive the public.

80.    Defendants' continued, knowing and intentional use of the Unregistered LABUBU Mark and LABUBU Trade Dress without Plaintiffs' consent or authorization constitutes intentional infringement of the Unregistered LABUBU Mark and LABUBU Trade Dress in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125.

81.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to their business and their valuable rights in and to the Unregistered LABUBU Mark and LABUBU Trade Dress and the goodwill associated therewith in an amount as yet

22

unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their Unregistered LABUBU Mark and LABUBU Trade Dress.

82.    Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**
**(By All Plaintiffs Against Defendants)**

83.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

84.    Plaintiffs, as the owners and/or exclusive licensees of all right, title and interest in and to the LABUBU Marks and LABUBU Trade Dress, have standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

85.    The LABUBU Marks and LABUBU Trade Dress are inherently distinctive and/or has acquired distinctiveness.

86.    Defendants knowingly and willfully used in commerce designs that are identical or confusingly similar to the LABUBU Marks and LABUBU Trade Dress and/or affixed, applied and/or used other designs in connection with the promotion of Defendants' Infringing Products

23

that are identical or confusingly similar to, and constitute reproductions of the LABUBU Marks and LABUBU Trade Dress and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are LABUBU Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs and/or that Defendants are affiliated, connected or associated with Plaintiffs, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the LABUBU Marks and LABUBU Trade Dress, to Defendants' substantial profit in blatant disregard of Plaintiffs' rights.

87.     By using designs that are identical or confusingly similar to the LABUBU Marks and LABUBU Trade Dress, Defendants have traded off the extensive goodwill of Plaintiffs and their LABUBU Trade Dress to induce customers to purchase Defendants' Infringing Products, and will continue to induce such customers to do the same. Such conduct has permitted, and will continue to permit, Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which they have amassed through their nationwide marketing, advertising, sales and consumer recognition

88.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of designs that are identical or confusingly similar to and constitute reproductions of the LABUBU Marks and

24

LABUBU Trade Dress would cause confusion, mistake or deception among purchasers, users and the public.

89.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiffs, their LABUBU Products, LABUBU Marks and LABUBU Trade Dress.

90.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of their LABUBU Products and by depriving Plaintiffs of the value of their LABUBU Marks and LABUBU Trade Dress as a commercial asset in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of the LABUBU Marks and LABUBU Trade Dress.

91.    Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Federal Copyright Infringement)**
**[17 U.S.C. § 501(a)]**
**(By POP MART Beijing Against Defendants)**

92.    Plaintiffs replead and incorporate by reference each and every allegation set forth

25

in the preceding paragraphs as if fully set forth herein.

93.    POP MART Beijing has been the exclusive holder of the copyright registrations of the LABUBU Works.

94.    Defendants had actual notice of POP MART Beijing's exclusive rights in and to the LABUBU Works.

95.    Defendants did not attempt and therefore inherently failed to obtain POP MART Beijing's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market the LABUBU Products and/or LABUBU Works.

96.    Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the LABUBU Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products, which bear such LABUBU Works, or artwork that is, at a minimum, substantially similar to the LABUBU Works.

97.    Defendants' unlawful and willful actions as alleged herein constitute infringement of the LABUBU Works, including POP MART Beijing's exclusive rights to reproduce, display, distribute, sell, and/or create derivations of such LABUBU Works in violation of 17 U.S.C. § 501(a).

98.    Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to POP MART Beijing in an amount as yet unknown but to be proven at trial, for which POP MART Beijing has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to POP MART Beijing.

99.     Based on Defendants' wrongful conduct, POP MART Beijing is entitled to injunctive relief, POP MART Beijing's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

A.     For an award of Defendants' profits and POP MART Singapore's and POP MART Beijing's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.     In the alternative to Defendants' profits and POP MART Singapore's and POP MART Beijing's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which POP MART Singapore and POP MART Beijing may elect prior to the rendering of final judgment;

C.     For an award of Defendants' profits and POP MART Singapore's and POP MART Beijing's damages in an amount to be proven at trial for willful trademark infringement of POP MART Singapore's and POP MART Beijing's federally registered LABUBU Marks, and such other compensatory damages as the Court determines to be fair and

27

appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for unregistered trademark infringement, unregistered trade dress infringement and false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.    For an award of POP MART Beijing's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the LABUBU Works under 17 U.S.C. § 501(a);

F.    In the alternative to POP MART Beijing's actual damages and Defendants' profits for copyright infringement of the LABUBU Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which POP MART Beijing may elect prior to the rendering of final judgment;

G.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

        i.    manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products;

ii.   directly or indirectly infringing in any manner any of Plaintiffs' LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works;

iii.  using any reproduction, copy or colorable imitation of Plaintiffs' LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works to identify any goods or services not authorized by Plaintiffs;

iv.   using any of Plaintiffs' LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works and/or any other designs and/or artwork that are confusingly and/or substantially similar to the LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products;

v.    using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiffs;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices,

29

including, without limitation, the actions described herein, including the of advertising and/or dealing in any Infringing Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiffs;

viii. engaging in any other act in derogation of Plaintiffs' rights;

ix. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Infringing Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products;

x. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xi. knowingly instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (x) above; and

H.   For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiffs for destruction any and all Infringing Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiffs' LABUBU Marks, LABUBU Trade Dress and/or LABUBU

30

Works, and/or bear any designs and/or artwork that are confusingly and/or substantially similar to the LABUBU Marks, LABUBU Trade Dress and/or LABUBU Works;

I.    For an order of the Court requiring that Defendants deliver up for destruction to Plaintiffs any and all Infringing Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiffs' LABUBU Marks and/or LABUBU Trade Dress, or bear any designs that are confusingly similar thereto pursuant to 15 U.S.C. § 1118;

J.    For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing Products as described herein, including prejudgment interest;

K.    For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiffs;

L.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

M.    For Plaintiffs' reasonable attorneys' fees;

N.    For all costs of suit; and

O.    For such other and further relief as the Court may deem just and equitable.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs respectfully demand a trial by jury on all claims.

31

32

Date: April 6, 2026

Respectfully submitted,

**EPSTEIN DRANGEL LLP**

BY: /s/ Jason M. Drangel
      Jason M. Drangel (JD 7204)
      jdrangel@ipcounselors.com
      Ashly E. Sands (AS 7715)
      asands@ipcounselors.com
      Danielle S. Futterman (DY 4228)
      dfutterman@ipcounselors.com
      Gabriela N. Nastasi
      gnastasi@ipcounselors.com
      Melissa J. Levine
      mlevine@ipcounselors.com
      6 East 45th Street, 7th Floor
      New York, NY 10017
      Telephone: (212) 292-5390
      Facsimile: (212) 292-5391
      *Attorneys for Plaintiffs*
      *POP MART Americas Inc.,*
      *POP MART (Singapore) Holding*
      *Pte. Ltd. and*
      *Beijing POP MART*
      *Cultural & Creative Co. Ltd.*